**Hermene Gilda RUIZ, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 3:98CV491 (AWT).**

United States District Court, D. Connecticut.

Sept. 27, 1999.

Alan Rosner, Bridgeport, CT, for Plaintiff.

Deidre Ann Martini, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

*ENDORSEMENT ORDER*

THOMPSON, District Judge.

Upon review and pursuant to 28 U.S.C. § 636(b) and Rule 2 of the Local Rules for United States Magistrate Judges (D.Conn.), Magistrate Judge Martinez's recommended ruling on pending motions [doc. # 14] is hereby **ACCEPTED**.

SO ORDERED.

*RECOMMENDED RULING ON
PENDING MOTIONS*

The plaintiff, Hermene Gilda Ruiz, filed this action seeking review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claim for disability insurance

benefits and Supplemental Security Income (SSI) benefits under the Social Security Act. Pending before this court is the plaintiff's Motion for Order Reversing the Decision of the Commissioner (doc. # 9) and the defendant's Motion for an Order Affirming the Decision of the Commissioner (doc. # 12).

The sole issue before the court is whether the administrative law judge ("ALJ") properly applied the treating physician rule when he rejected the opinion of Dr. Luis Perez, the plaintiff's treating psychiatrist. For the reasons that follow, the court recommends that the plaintiff's motion be GRANTED and the defendant's motion be DENIED.

## I. PROCEDURAL HISTORY

The plaintiff claims that she became disabled on November 1, 1994, and that she is entitled to disability income benefits and SSI benefits because of depression, anxiety, high blood pressure, glaucoma, arthritic degeneration of the spine and persistent pain. (R. 16, 64, 86, 207.)

The plaintiff filed an application for SSI benefits on June 14, 1995. (R. 86.) Her application was denied on September 12, 1995. (R. 91.) On September 18, 1995, she filed a request for reconsideration. (R. 96.) On November 7, 1995, the agency issued notices of reconsideration and upheld the denial of benefits. (R. 98–99.) A hearing before an ALJ was held on September 9, 1996 at which the plaintiff appeared with counsel. (R. 32–63.)

## II. BACKGROUND

### A. Plaintiff's Testimony

The plaintiff testified at the hearing as follows.

The plaintiff was born on November 27, 1938. (R.[1] 16,37.)[2] She attended school in Puerto Rico through the fourth grade. She cannot read or write in English, but is marginally literate in Spanish. (R. 16, 38.)

In 1991, the plaintiff moved from Puerto Rico to Connecticut. (R. 16.) She worked full-time as a sewing machine operator for two years, earning minimum wage. (R. 112.) She sat for eight hours a day with constant bending and reaching, and lifted up to ten pounds. (R. 113.) The plaintiff stopped working due to dizziness.[3] (R. 41.)

In her application for benefits, the plaintiff said that she has glaucoma and for the past two years could see only a black cloud out of her right eye. (R. 40.) She suffers symptoms related to high blood pressure and bronchitis. (R. 59.) At the hearing, the plaintiff said she also has memory problems. For example, she does not remember the exact year she last worked and her daughter must constantly remind her to do basic tasks, such as showering, and she relies upon her daughter to keep track of her appointments. (R. 41–42.) One of her daughters prepares her meals and another tends to her household chores. (R. 43.)

For the last four years, she has suffered chronic insomnia and has been unable to sleep for more than a few minutes a day. She gets anxious and lies awake worrying about an alleged liver illness.[4] She is depressed and cries for hours on end. (R. 48–49.) For the last two years, she has been hearing voices almost every day. (R. 50.)

The plaintiff spends two hours a day resting in bed. For recreation, she watches television, listens to the radio and visits with her daughter. (R. 52–53.) She

1. The administrative record filed by the Commissioner shall be referred to as "R".

2. The ALJ incorrectly stated that Mrs. Ruiz' birth date is November 1937. (R. 16.) This discrepancy has no effect on any part of this opinion.

3. The exact date that the plaintiff ceased working is not established definitively anywhere in the record.

4. This illness is not asserted in the claim for disability benefits.

does not go out unless her daughter takes her. Her daughter drives because the plaintiff is unable. (R. 55.)

She suffers from arthritis in her neck, upper back, and left arm. The resulting pain is strong and constant and prevents her from bending to fill her bath. (R. 52, 54.)

### B. *Other Testimony*

The ALJ also heard testimony from Lillian Ruiz, the plaintiff's daughter. (R. 58.) Ms. Ruiz testified that the plaintiff does not now, and never did, babysit for anyone. (*Id.*)

### C. *Medical Records*

The ALJ had before him medical evidence from July 1984 through September 1996. Because the only issue before this court concerns the plaintiff's psychiatric treatment, a summary of only that evidence follows.

The plaintiff's medical records reveal that she has a long history of anxiety and insomnia. The plaintiff was treated at Greater Bridgeport Community Health Center from April 23, 1991 through September 6, 1996.[5] Ativan[6] and/or Halcion[7] were prescribed several times during the years 1991 through 1993. (R. 177–182.) On May 17, 1994, the plaintiff complained of malaise and insomnia. (R. 183.) On August 25 and September 19, 1994, she again complained of insomnia. The treat-

ing physician again prescribed Ativan and Halcion. (R. 186–187.) On October 14, 1994, her treating physician noted that, although she was "doing well," she should continue taking medication. He prescribed Xanax[8] for her anxiety. On October 27, 1994, the plaintiff reported that her anxiety symptoms were stabilized. (R. 187.) From March through August of 1995, her prescriptions were renewed and she received a new prescription for Ambien.[9] (R. 191–192.)

In late 1995, the plaintiff continued to suffer anxiety and insomnia and began treatment at a local mental health clinic. She was treated at the Greater Bridgeport Community Mental Health Center from December 8, 1995 through April 30, 1996. (R. 195–200.) At her initial visit, Dr. Perez, her treating psychiatrist, stated in his intake notes that the plaintiff was depressed and nervous, had difficulty sleeping, suffered crying spells, heard voices and hallucinated. She also experienced suicidal ideation and demonstrated a sad and anxious mood. Her speech was slow and tired. (R. 195.) The plaintiff began a course of individual as well as group therapy. (R. 196).

On December 15, 1995, Dr. Perez diagnosed dysthymia.[10] He prescribed Prozac and Elavil for her depressive symptoms. (R. 196.) On January 30, 1996, the plaintiff reported having had a "wonderful experience" on a vacation to Puerto Rico and

---

5. Because the years 1991 to 1993 are not under consideration for disability benefits, the court does not relate the medical record in detail. The court does note, however, that the medical record shows the plaintiff's long history with insomnia and anxiety.

6. Ativan is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety or anxiety associated with depressive symptoms. Physician's Desk Reference, 53rd Edition, 3271 (1999).

7. Halcion is indicated for the short-term treatment of insomnia. Physician's Desk Reference, 53rd Edition, 2491 (1999).

8. Xanax Tablets are indicated for the management of anxiety disorder or the short-term

relief of symptoms of anxiety. Physician's Desk Reference, 53rd Edition, 2517 (1999).

9. Ambien is indicated for the short-term treatment of insomnia. Physician's Desk Reference, 53rd Edition, 2930 (1999).

10. "Dysthymia" is defined as "a mood disorder characterized by depressed feeling (sad, blue, low, down in the dumps) and loss of interest or pleasure in one's usual activities and in which the associated symptoms have persisted for more than two years but are no severe enough to meet the criteria for major depression." *Dorland's Illustrated Medical Dictionary,* p. 519.

Dr. Perez noted that she was improving. (R. 197.) On that same day, however, she still reported symptoms of sadness, poor sleeping, high levels of anxiety and a lack of energy. (R. 197). Dr. Perez increased her levels of Prozac and Elavil. (R. 197).

Progress notes dated January 30, 1996 from the Bridgeport Community Mental Health Center show that Jose Olmo, a psychiatric social worker, conducted a vocational assessment and that the assessment revealed that the plaintiff did not seem motivated to work because of her poor education and lack of experience. (R. 197.) The assessment itself, however, is not a part of the record.

In February and March of 1996, the plaintiff had problems tolerating the Prozac/Elavil combination and reported difficulty sleeping. (R. 198.) On April 9 and 11, 1996, the plaintiff told Dr. Perez that she had noticed an improvement in her ability to sleep. Dr. Perez prescribed a combination of Halcion and Prozac. She continued to attend group therapy once a

week. By the end of April, however, she again reported feelings of apprehension and irritability and as well as insomnia. (R. 199–200). In response, Dr. Perez increased her dosage of Halcion. (R. 198, 200).

On a Mental Impairment Evaluation dated May 17, 1996, Dr. Perez, the plaintiff's treating psychiatrist, opined that the plaintiff's depression and anxiety render her disabled within social security regulations. Dr. Perez's evaluation form says that the plaintiff had been suffering from depression for the last 14 years and that she had increased sadness, decreased concentration, decreased sleep (two hours per night), vague suicidal thoughts, and heard voices calling her name. The evaluation form also states that as of April 30, 1996, the plaintiff continued to complain of general apprehension, chronic insomnia and high levels of anxiety.[11] (R. 203.) The form includes check marks under the 12.04–Affective Disorder Listing[12] for

---

11. These notes are obviously written in a different hand than that of Dr. Perez.

12. The report, which is written on a pre-printed form, is based upon Section 12.04 (20 C.F.R. pt. 404, Subpt. P, App.1 (1998)) of the social security regulations. This section provides the basis for a finding of disability resulting from an affective disorder such as that claimed by the plaintiff. Section 12.04 provides:

> *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
> 1. Depressive syndrome characterized by at least four of the following:
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Pyschomotor agitation or retardation; or

e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
 a. Hyperactivity; or
 b. Pressure of speech; or
 c. Flight of ideas; or
 d. Inflated self-esteem; or
 e. Decreased need for sleep; or
 f. Easy distractibility; or
 g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
 h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
 AND
B. Resulting in at least two of the following:
 1. Marked restriction of activities of daily living; or
 2. Marked difficulties in maintaining social functioning; or

"moderate restrictions of daily living," "marked difficulties in maintaining social function," "constant deficiencies in concentration and continual episodes of deterioration or decompensation in work or work-like settings." (R. 207.) Dr. Perez's opinion, as set forth on the evaluation form, is tantamount to a finding of disability under Section 12.04 of the social security regulations. *See* fn. 12.

On May 21, 1996, notes from the Greater Bridgeport Community Mental Health Center indicate that the plaintiff again complained of chronic insomnia but otherwise was doing well. On July 9, 1996, the plaintiff complained of extreme anxiety but reported an improvement in her ability to sleep. (*Id.*) On August 21, 1996, she again complained of poor sleeping, high anxiety, arthritis and stomach pain. (R. 218.)

## III. *STANDARD OF REVIEW*

The scope of review of a social security disability determination involves two levels of inquiry. The court must first decide whether the Commissioner applied the correct legal principles in making the determination. Next, the court must decide whether the determination is supported by substantial evidence. *See Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998.) Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Yancey v. Apfel,* 145 F.3d 106, 110 (2d Cir.1998.) The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel,* 23 F.Supp.2d 179, 189 (D.Conn.1998); *Rodriguez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y.1977.) The court may not decide facts, reweigh evidence or substitute its

judgment for that of the Commissioner. *See Dotson v. Shalala,* 1 F.3d 571, 577 (7th Cir.1993.) The court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings. Furthermore, " '[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles.' " *Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir.1998) (quoting *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987).)

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. *See* 42 U.S.C. § 423(a)(1.) Additionally, indigent individuals may be entitled to disability benefits under the Supplemental Security Income program. 42 U.S.C. §§ 1381–1383(c). §§ 1381–1383(c.) "Disability" is defined under both programs as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1), 1382c(a)(3.)

Determining whether a claimant is disabled requires a five-step process. *See* 20 C.F.R. § 404.1520. First, the court must determine whether the claimant is currently employed. *See* 20 C.F.R. § 404.1520(b), 404.1572(b). If the claimant is currently employed, the claim is disallowed. *See* 20 C.F.R. § 404.1520(b). If the claimant is not working, as a second step, the agency must make a finding as to the existence of a severe mental or physical impairment; if

---

3. Deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4. Repeated episodes of deterioration or decompensation in work or work-like set-

tings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

none exists, the claim is denied. *See* 20 C.F.R. 404.1520(c). Once the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in appendix 1 of the regulations (the "Listings"). *See* 20 C.F.R. § 404.1520(d); *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Balsamo v. Chater,* 142 F.3d at 79–80. If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. *See* 20 C.F.R. § 404.1520(d); *Balsamo v. Chater,* 142 F.3d at 80.

If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work. *See* 20 C.F.R. § 404.1520(e). If the claimant cannot perform his former work, he must show, as a fifth and final step, that he is prevented from doing any other work. A claimant is entitled to receive disability benefits only if he cannot perform any alternate gainful employment. *See* 20 C.F.R. § 404.1520(f).

The initial burden of establishing disability is on the claimant. *See* 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(G). Once the claimant demonstrates that he is incapable of performing his past work, however, the burden shifts to the Commissioner to show that the claimant has the residual functional capacity to perform other substantial gainful activity in the national economy. *See Balsamo v. Chater,* 142 F.3d at 80 (citing cases).

### C. *Findings by the ALJ*

Following the five step evaluation process, the ALJ determined that the plaintiff had not engaged in any substantial gainful activity since filing her application in June, 1995. The ALJ then found that the plaintiff does not have an impairment or combination of impairments that meet or exceed any listed impairment. In so concluding, the ALJ rejected her treating psychiatrist's opinion that her symptoms qualified her as disabled under Section 12.04 of the Listings. (R. 25–26.) The ALJ further found the plaintiff's "allegations of disabling physical and/or mental limitations due to the ... conditions are not credible in light of the detailed medical findings of treating and examining physicians; the chronology of her medical care; her limited need for medication and a lack of any relevant hospitalizations; her daily activities; lack of recent work history; and the totality of the record." (R. 26.) The ALJ determined that the plaintiff "has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for performing more than medium exertion or conducting highly stressful work activities" and that the plaintiff's "past relevant work as a sewing machine operator was generally sedentary work which was not highly stressful." (R 26.) Finally, the ALJ determined that the plaintiff's alleged impairments do not prevent her from performing her past work as a sewing machine operator and concluded that she was not under any disability as defined in the Social Security Act at any time through the date of decision. (R.26.)

### IV. *DISCUSSION*

In reaching his conclusion that the plaintiff was not disabled in accordance with § 12.04 of the Listing, the ALJ rejected the opinion of the plaintiff's treating psychiatrist, Dr. Perez. Specifically, the ALJ did not credit Dr. Perez's opinion that the plaintiff suffered "marked difficulties in social functioning" and "constant deficiencies of concentration, persistence or pace."

The plaintiff argues that she is entitled to judgment in this case because the ALJ failed to properly apply the "treating physician rule." She contends that Dr. Perez's May 17, 1996 psychiatric evaluation establishes a *prima facie* case of disability under the affective disorders listing; *see* fn. 12; and that the ALJ failed to apply the correct legal standard by not affording his opinion controlling weight. The Com-

missioner, on the other hand, maintains that the ALJ did not err in rejecting Dr. Perez's opinion because it was not supported by medical findings and was contradicted by other evidence in the record.

 The Commissioner has promulgated regulations regarding the evaluation of treating and non-treating physicians' opinions.[13] *See* 20 C.F.R. § 404.1527.[14] These regulations, as well as their judicially created predecessor, are known as the "treating physician rule." The rule requires that a treating physician's opinion be afforded substantial deference. *See Arnone v. Bowen*, 882 F.2d 34, 41 (2d Cir. 1989); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir.1983). Simply stated, the rule provides that

> [t]he opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *See Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993)(same). In analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opin-

ion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983); *see also Balsamo*, 142 F.3d at 80–81 (citing *McBrayer* ); *Wagner v. Secretary of Health and Human Servs.*, 906 F.2d 856, 862 (2d Cir.1990) ("[A] circumstantial critique by [a] non-physician[ ], however thorough or responsible, must be overwhelmingly compelling" to justify a denial of benefits). *Rosa v. Callahan*, 168 F.3d 72, 78–9 (2d Cir.1999).

 Where the ALJ declines to give a treating physician's opinion controlling weight, he must apply a variety of factors to determine how much weight the opinion should receive. These factors include: (1) whether the doctor actually examined the plaintiff; (2) the length of the treatment relationship and frequency of examinations; (3) the nature and extent of the treatment provided by the treating doctor including the kinds of examinations and tests performed or ordered; (4) the extent to which the opinion is supported by relevant medical evidence such as medical signs or laboratory findings; (5) whether the opinion is consistent with the record as a whole; (6) whether the treating source is

---

**13.** In *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir.1993), The Second Circuit found the Commissioner's regulations to be valid and thus binding upon the courts in this Circuit.

**14.** 20 C.F.R. § 404.1527(d)(1) through (5) provides in pertinent part:

> Generally, [the Commissioner] give[s] more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the plaintiff's] impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of [the plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

> with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight. When [the Commissioner] do[es] not give the treating source's opinion controlling weight, [h]e [must] apply the [following] factors . . .
> (i) [l]ength of the treatment relationship and the frequency of examination . . . .[;]
> (ii)[n]ature and extent of the treatment relationship . . . [;] (3)[s]upportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion . . . .[;] (4)[c]onsistency. Generally, the more consistent an opinion is with the records as a whole, the more weight we will give that opinion . . . . [;] (5) Specialization. . . . [; and] (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.
> *See* 20 C.F.R. § 404.1527(d)(1) through (5).

208

giving an opinion in his area of specialty; and (7) other relevant factors. *See* 20 C.F.R. § 404.1527(d)(1) through (5).

■ As a basis for his rejection of Dr. Perez's opinion, the ALJ focused primarily on factors 4, 5 and 7. He found that Dr. Perez's opinion was not supported by medical findings and that it was contradicted by the progress notes from the Bridgeport Community Health Center and from Dr. Perez's own clinic.[15] In addition, the ALJ noted that Dr. Perez did not diagnose the plaintiff with major depression, but rather, with dysthymia. Further, he found that "[i]t was apparent that the form was executed by a clinic member and cosigned by Dr. Perez." Finally, the ALJ noted that the plaintiff's counsel was granted additional time to provide clarification of Dr. Perez's opinion but failed to do so.

After carefully considering the record, the court determines that the ALJ improperly applied the treating physician rule. In calling into question the issue of whether the listed symptoms support Dr. Perez's opinion, the ALJ essentially substituted his own opinion for that of the plaintiff's treating physician. This is impermissible. *See Rosa v. Callahan,* 168 F.3d at 79 (in rejecting the treating physician's opinion, ALJ improperly substituted his own opinion for that of the treating physician.) The ALJ rejected Dr. Perez's opinion that the plaintiff suffered "marked difficulties in maintaining social function" and "constant deficiencies in concentration and continual episodes of deterioration or decompensation in work or work like settings;" *see supra,* pp. 204–05; because he found that such opinions were not supported by the medical evidence. The ALJ is not qualified to know which symptoms are necessary to support Dr. Perez's findings. *See id.* (ALJ may not set his own expertise against that of a treating physician;

ALJ not qualified to make a medical determination that the absence of certain symptoms precludes in finding of disability).

In addition, the ALJ's finding that Dr. Perez's opinion was not supported by medical findings is inconsistent with the record. Many of the symptoms listed in Dr. Perez's opinion are found elsewhere in the plaintiff's medical records. For example, Dr. Perez's notes, as well as additional notes from the Bridgeport Community Mental Health Center, contain numerous references to the plaintiff's complaints of hallucinations, hearing voices, crying spells, chronic insomnia, and severe levels of anxiety, among other things.

As further support for his finding that Dr. Perez's opinion was not entitled to controlling weight, the ALJ improperly points to isolated instances where the plaintiff reported feeling better or showed signs of improvement. The ALJ cannot rely upon temporary relief from some of the symptoms of the plaintiff's mental illness to support his conclusion that Dr. Perez's opinion is not entitled to controlling weight. *See Murdaugh v. Secretary of DHHS,* 837 F.2d 99, 102 (2d Cir.1988) ("a claimant need not be an invalid in order to be found disabled.")

The ALJ also points to an entry dated January 30, 1996 in support of his dismissal of Dr. Perez's opinion. Notes from that date state that Jose Olmo, a social worker who was one of the plaintiff's therapists, conducted a vocational assessment which revealed that the plaintiff's lack of motivation to find work derived from her poor education and experience. This assessment, however, is not even part of the record.

15. The progress notes indicate that the plaintiff was helping her daughter to care for her grandchildren, that she enjoyed a trip to Puerto Rico and that "[c]ontrary to her testimony that she sleeps poorly, she reported improved sleeping with medication." The ALJ noted that the plaintiff and her daughter both testified at the hearing that the plaintiff did *not* care for her grandchildren and that the progress notes are in direct contradiction of that testimony.

Further, some of the statements that the ALJ makes in his opinion as support for his conclusion are misleading. The ALJ makes much of the fact that a member of Dr. Perez's staff apparently filled out the form, not Dr. Perez himself, and that Dr. Perez merely "co-signed" the form. This reasoning is flawed. First, the court is not persuaded that Dr. Perez himself was required to fill out the form in order for it to be accorded weight. Second, the ALJ's statement that Dr. Perez merely "co-signed" the form is unfounded—his is the only signature on the form. Despite the ALJ's apparent suspicion that Dr. Perez simply signed the form without having reviewed it, the record is devoid of any evidence to support the ALJ's conjecture.

None of the reasons articulated by the ALJ for discrediting Dr. Perez's opinion stand up to careful scrutiny. The court finds that the ALJ improperly substituted his own judgment for that of the plaintiff's treating physician. Accordingly, the court recommends that the matter be reversed and remanded to the Commissioner with directions to reconsider the plaintiff's application taking Dr. Perez's opinion into proper consideration.

## V. *CONCLUSION*

Accordingly, the plaintiff's motion should be GRANTED and the defendant's motion should be DENIED.

Any party may seek the district court's review of this recommendation. *See* 28 U.S.C. § 636(b) (written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992) (failure to file timely objections to Magis-

trate Judge's recommended ruling waives further review of the ruling).