Luz M. SANTIAGO, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 05 CIV. 3918(VM).

United States District Court,
S.D. New York.

July 27, 2006.

Charles E. Binder, Binder and Binder, New York, NY, for Plaintiff.

Susan D. Baird, U.S. Attorney's Office, S.D.N.Y. (St. Andrew's), New York, NY, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Luz Santiago ("Santiago") brought this action for review of the final determination by the Commissioner of Social Security (the "Commissioner") denying her claims for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g) (" § 405(g)"). Santiago now moves for judgment on the pleadings and the Commissioner cross-moves for a judgment on the pleadings. The Court concludes that remand is appropriate because the Administrative Law Judge ("ALJ") committed legal error by not properly applying the "Treating Physician Rule," 20 C.F.R. § 404.1527(d)(2). Accordingly, Santiago's motion to remand this matter to the Com-

missioner pursuant to § 405(g) for further proceedings is granted, and the Commissioner's cross-motion is denied.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

On April 6, 2000, Santiago filed an application for SSI benefits, claiming that she was unable to work due to psychiatric problems, hypertension, and colon polyps. After her initial application and a subsequent request for reconsideration were denied, she filed a request for a hearing to challenge those denials. The hearing was held on March 12, 2002 (the "Hearing"), before ALJ Kenneth Levin.

In a decision dated March 19, 2002 (the "Decision"), the ALJ determined that Santiago did not suffer from any disability as defined in 42 U.S.C. § 423(d) and thus was not eligible for SSI benefits. Santiago's request for review of the Decision was denied by the Commissioner's Appeals Council. Pursuant to § 405(g), this Court now reviews the ALJ's Decision. Since Santiago does not challenge the ALJ's finding that she is not physically disabled, the Court will examine only the question of whether she suffers from a psychiatric disability.

### B. THE EVIDENCE

The evidence presented at the hearing indicates that Santiago first received treatment for her psychiatric problems in October of 1999. The record includes the following.

### 1. Santiago's Testimony

Santiago testified that she frequently feels anxious, helpless, and withdrawn. (Tr. 270.)[1] She claims to have difficulty getting out of bed for days at a time and says that she attempted suicide with sleeping pills in 1999. (Tr. 112, 269.) Santiago lives with her teenage son who has emotional problems but contends that she does little in the way of taking care of him. (Tr. 271.) She also denies taking care of her elderly mother, although she sometimes visits her. (Tr. 273.) Santiago testified that her daughter does all of her shopping and housework and that she has one friend who occasionally comes to visit when she is feeling better. (Tr. 272–73.) She also said that she goes to a nearby church for services about once a month. (Tr. 274.)

### 2. Records from Treating Physicians

About once a week beginning in October of 1999, Santiago met with Maria Malinowska, Ph.D. ("Malinowska"), a psychologist at St. Mark's Place Institute for Mental Health, Inc. ("St.Mark's") in New York City. (Tr. 255.) On March 7, 2000, Malinowska diagnosed Santiago with major depression and cognitive disorder. (Tr. 169.) In a letter dated June 6, 2000, Malinowska made the same diagnosis of major depression, adding that she did not think Santiago was capable of working. (Tr. 110.) On July 24, 2000, Malinowska reported that Santiago suffered from a marked difficulty in maintaining social functioning and constant deficiencies in concentration. (Tr. 115–16.) Various tests performed by Malinowska concluded that Santiago also suffers from low intelligence, impaired reasoning, and poor motor skills. (Tr. 113–14.)

Throughout much of this period, Santiago was also seen once a month by Dr. Giovanny Nunez, MD ("Nunez"), a psychiatrist at St. Mark's. (Tr. 263.) Nunez prescribed various medications for Santiago, including Celexa, Serzone, Ambien, and Remeron. (Tr. 112, 216–17.) On August 23, 2001, Nunez filed a psychiatric report, indicating that in his opinion Santiago suf-

---

1. "Tr." refers to the record of proceedings filed in this action on August 26, 2005.

fered from major depression and cognitive disorder. (Tr. 257.) He further indicated that Santiago's afflictions caused: a marked restriction on activities of daily living; a marked difficulty in maintaining social functioning; deficiencies of concentration; and episodes of decompensation.[2] (Tr. 258–59.) The report was signed by Nunez, but there is some question as to who wrote its contents.

### 3. Evaluations by Non–Treating Physicians

At the behest of the Commissioner, on May 1, 2000, Santiago was evaluated by Dr. Myron Seidman, MD ("Seidman"), who performed a physical evaluation, and Dr. Gerardo Tapia, MD ("Tapia"), who performed a psychiatric exam. (Tr. 93–96; 100–01.) Seidman found no physical disabilities. (Tr. 96.) Tapia diagnosed Santiago with major depression, but concluded that she had a good ability to carry out instructions and a fair ability to respond appropriately to supervision and coworkers in an employment context. (Tr. 101.)

On May 19, 2000, Santiago was also seen by two physicians from the Disability Determination Services ("DDS"). (Tr. 128–40.) They agreed that Santiago was depressed but concluded that she did not suffer from restrictions of activities of daily living, had no difficulties in maintaining social functioning, experienced no deficiencies of concentration, and suffered no episodes of decompensation. (Tr. 135.)

### 4. Expert Testimony

At the Hearing, Dr. Carlos Jusino–Berrios ("Jusino"), a psychiatrist and neurologist, testified as a medical expert. (Tr. 275.) Jusino never personally examined Santiago, instead basing his opinion on her medical records and her testimony. (Tr. 275.) He argued that Malinowska relied too heavily on psychological tests in concluding that Santiago suffered from a cognitive disorder. (Tr. 275–76.) He testified that based on the entire medical record, he did not believe Santiago suffered from a cognitive disorder. (Tr. 276.) Moreover, he opined that the impairments on Santiago's daily activities, social functioning and concentration were moderate, not marked. (Tr. 276.) He further testified that he did not believe that Santiago suffered through any periods of decompensation. (Tr. 276.)

Also at the Hearing, a vocational expert, Miriam Greene ("Greene"), testified that, based on her physical and mental capabilities, Santiago was capable of working as an assembler, a packager, or a housekeeper. (Tr. 278.)

### 5. Other Evidence

The ALJ also made his own observations during the Hearing. He noted, among other things, that Santiago appeared "absolutely euthymic,"[3] had no difficulty answering any questions, and made it to the hearing on time by bus. (Tr. 24–25.)

### C. MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Fed.R.Civ.P. 12(c), Santiago and the Commissioner move for judgment on the pleadings. Santiago argues that the Court should reverse the ALJ's ruling on the ground that he did not follow administrative procedure in making his decision. Specifically, Santiago claims that if the ALJ had given controlling weight to

---

**2.** Decompensation is defined as the appearance or exacerbation of a mental disorder due to failure of defense mechanisms. *PDR Medical Dictionary*, 462 (2nd Edition, 2000).

**3.** Euthymic is defined as "relating to, or characterized by euthymia" (joyfulness; mental peace and tranquility; moderation of mood, not manic or depressed). *PDR Medical Dictionary*, 627 (2nd Edition, 2000).

the conclusions of her treating physicians as required under 20 C.F.R. § 416.927(d)(2), he would have found that she suffered from disabling cognitive and affective disorders. The Commissioner disagrees, arguing that the ALJ properly gave the opinions of Santiago's treating physicians little weight because substantial evidence in the record contradicted their conclusions. The Court agrees with Santiago that the ALJ did not properly apply the "Treating Physician Rule" and thus remands the case to the Commissioner to reconsider the evidence in a manner consistent with this ruling.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Under the Act, "the [federal district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's scope of review of a disability determination entails two steps of inquiry. *See Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). First, the Court must decide "whether [the agency] applied the correct legal principles in making the determination," and second, "whether the determination is supported by 'substantial evidence.'" *Id.* (*quoting* 42 U.S.C. § 405(g)).

■ Under the second prong of this test, "the term 'substantial' does not require that the evidence be overwhelming, but it must be 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Barnhart,* No. 01 Civ. 2744, 2004 WL 1304050, at *5 (S.D.N.Y. May 6, 2004) (*quoting Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Where substantial evidence does exist, the

Commissioner's determination of fact is conclusive, even where the reviewing court disagrees. *See Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982). Thus, the reviewing court is precluded from undertaking a *de novo* review. *See Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (citations omitted).

### B. DISABILITY DETERMINATIONS

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The effect of the physical or mental impairment must be:

> of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The Commissioner must apply a five-step procedure to assess disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The Second Circuit has described the process as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third

inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience ... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999) (*quoting Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982)).

At any step, if the Commissioner can make a finding that the claimant is disabled or not disabled, he must do so and the process need not continue. *See* 20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make such a determination, then he must continue to the next step. *See id.* The burden of proving the first four steps falls on the claimant, but if the process proceeds to the fifth step, the Commissioner must prove that the claimant can make an adjustment to other work. *See DeChirico v. Callahan,* 134 F.3d 1177, 1180 (2d Cir.1998); *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996) (citations omitted).

The ALJ applied the five-part test for determining whether Santiago was disabled and concluded: (1) Santiago was not gainfully employed; (2) she suffers from a severe combination of major depressive disorder, personality disorder, and hypertension but does not suffer from a severe cognitive disorder; (3) the depression, personality disorder, and hypertension are not disabling; (4) Santiago cannot return to her previous employment as a home attendant; (5) she is able to work as an assembler, packager, or housekeeper. (Tr. 28–29.) Because the ALJ found that Santiago had no disabilities and was capable of working certain jobs, he denied her request for SSI benefits. (Tr. 29.)

Santiago challenges the ALJ's conclusions that she does not suffer from a severe cognitive disorder and that her depression and personality disorder are not disabilities. Since Santiago does not challenge the ALJ's findings under the first, fourth, or fifth steps of the five-step test, or the finding that she is not physically disabled, the Court need not address those findings here.

Although it is not the Court's role to overturn an ALJ's finding of fact, *see Rutherford,* 685 F.2d at 62, the Court can intervene if the ALJ improperly applies legal principles in making a finding, *see Johnson,* 817 F.2d at 985. Here, the ALJ committed legal error by failing to properly weigh the opinions of Santiago's treating physicians, Malinowska and Nunez, as required under 20 C.F.R. § 416.927(d)(2), also known as the Treating Physician Rule.

## C. *TREATING PHYSICIAN RULE*

▬▬ The opinion of a claimant's treating physician should be given controlling weight over other medical opinions as long as it is "well supported by medical findings and not inconsistent with other substantial evidence." *Rosa,* 168 F.3d at 78–79; *see also* 20 C.F.R. § 416.927(d)(2). Controlling weight should be given to the opinion of the treating physician especially where the views of a non-treating physician are solicited solely for the purposes of the disability proceeding itself. *See Villanueva v. Barnhart,* No. 03 Civ. 9021, 2005 WL 22846, at *11 (S.D.N.Y. Jan.3, 2005) (*citing Schisler v. Sullivan,* 3 F.3d 563, 567–68 (2d Cir.1993)).

■ Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to significant weight because "the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Gonzalez v. Callahan,* No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (*citing Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988)). If not controlling, the proper weight given to a treating physician's opinion depends upon: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the relationship; (3) the amount of evidence the treating physician presents in support of her opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating physician's specialization in the relevant area; and (6) other factors. *See* 20 C.F.R. § 404.1527(d)(2)-(6). If the ALJ does not articulate "good reasons" for the weight it accords to a treating physician's opinion, then it is proper for the Court to remand for a comprehensive explanation of the ALJ's reasoning. *See Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir.2004).

D. *TREATING PHYSICIAN RULE APPLIED TO AFFECTIVE DISORDERS*

The ALJ did not properly apply the Treating Physician Rule when considering whether Santiago's depression and personality disorder qualify as disabilities.

For an affective disorder to be considered a disability, a claimant's symptoms must meet the following criteria:

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

 a. Anhedonia or pervasive loss of interest in almost all activities; or

 b. Appetite disturbance with change in weight; or

 c. Sleep disturbance; or

 d. Psychomotor agitation or retardation; or

 e. Decreased energy; or

 f. Feelings of guilt or worthlessness; or

 g. Difficulty concentrating or thinking; or

 h. Thoughts of suicide; or

 i. Hallucinations, delusions or paranoid thinking;

Or

2. Manic syndrome characterized by at least three of the following:

 a. Hyperactivity; or

 b. Pressure of speech; or

 c. Flight of ideas; or

 d. Inflated self-esteem; or

 e. Decreased need for sleep; or

 f. Easy distractibility; or

 g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

 h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

("A Criteria")

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

("B Criteria")

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The ALJ did not address the A Criteria but concluded that Santiago's depression and personality disorder were not disabilities because they did not meet any of the B Criteria. (Tr. 27.)

■ The ALJ's finding that the B Criteria were not satisfied directly contradicted the opinions of Malinowska and Nunez (Tr. 115–16; 258–59), who the ALJ acknowledged were Santiago's treating physicians for the purposes of the Treating Physician Rule. (Tr. 26.) In other words, the ALJ did not give the opinions of Santiago's treating physicians controlling weight on the question of whether the B Criteria were met. Under 20 C.F.R. § 416.927(d)(2), the ALJ can give the treating physicians' opinions less than controlling weight only if they are not well supported by medical findings or are inconsistent with other substantial evidence in the record. *See Rosa,* 168 F.3d at 78–79.

The ALJ erred in concluding that substantial evidence in the record contradicts the opinions of Santiago's treating physicians, thus permitting him to accord those opinions little weight. For the reasons set forth below, the evidence the ALJ cites as contradicting the opinions of Santiago's treating physicians is not substantial.

■ For example, the ALJ completely disregarded Nunez's opinion that Santiago's depression met the B Criteria on the ground that Nunez expressed his view by signing a report that the ALJ believes was written by Malinowska. (Tr. 23.) However, even if the ALJ's handwriting analysis is accurate and the report was written by Malinowska, there is no reason to believe that the report Nunez signed does not reflect his own view. Nor is there any legal principle which states that a doctor must personally write out a report that he signs for it to be afforded weight. *See Ruiz v. Apfel,* 98 F.Supp.2d 200, 209 (D.Conn.1999) (holding that ALJ must give weight to a report signed by doctor even though it was prepared by someone else). Since Nunez signed his name to the report and there is no evidence indicating that the report does not represent his opinion, the ALJ erred in discounting Nunez's opinion on this basis alone.

■ The ALJ's conclusion that treating physician Malinowska's opinion was "not entitled ... to very great weight" (Tr. 26) is improper because he did not cite substantial evidence in the record that is inconsistent with her opinion. *See Rosa,* 168 F.3d at 78–79. As an initial matter, the Court is concerned that the ALJ's decision appears to have hinged, at least in part, on a bias against Malinowska based on past experience. In his opinion, the ALJ remarked that Santiago's test results came out "remarkably similarly to the same battery of tests [Malinowska] has been giving to patients of this clinic for the 11½ years that I have worked as an administrative law judge." (Tr. 24.) It is inappropriate for an ALJ to consider prior dealings with a physician when deciding how much weight to assign to the physician's opinion. *See Gonzalez v. Apfel,* 113 F.Supp.2d 580, 589 n. 14 (S.D.N.Y.2000) ("Nowhere do the regulations allow the ALJ to consider his personal knowledge of and relationship with a medical source in evaluating the evidence.").

■ Moreover, the evidence that the ALJ cites as contradicting Malinowska's opinion is not substantial. First, at several points in the opinion, the ALJ cites his own observations of Santiago's appearance. According to the ALJ, Santiago was "absolutely euthymic ... despite the inherent

stressfulness of a hearing setting" (Tr. 26); she had no difficulty concentrating or answering questions (Tr. 26); and her grooming and behavior were good. (Tr. 27.) The ALJ is not a mental health expert, however, and it is improper for his own observations of Santiago to be given essentially medical weight while the opinions of physicians who have treated the patient over the course of several years are given nearly none. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) (*quoting McBrayer v. Sec'y of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983)) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). While the ALJ can consider a claimant's demeanor in evaluating her credibility, these observations do not equate to medical evidence and are entitled to only "limited weight." *Schaal v. Apfel,* 134 F.3d 496, 502 (2d Cir.1998).

Second, the ALJ points out that Malinowska's opinion is contradicted by the opinions of Tapia and the two DDS doctors. All three of these doctors are mental health experts, so their opinions are relevant. However, each observed Santiago only once. As the regulations themselves emphasize, mental disabilities may be difficult to detect during any given evaluation. "The level of your functioning at a specific time may seem relatively adequate...[t]hus, it is vital to obtain evidence from relevant sources over a sufficiently long period of time prior to the date of adjudication to establish your impairment severity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

The Treating Physician Rule recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing. *See Villanueva,* 2005 WL 22846 at *11. The rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of Tapia and the DDS doctors, absent more compelling evidence their opinions should not be given controlling weight over those of Nunez and Malinowska. *See* 20 C.F.R. § 416.927(d)(2).

Third, the ALJ asserts that "the only opinions as to whether or not claimant has a Listings-level impairment" are the DDS physicians' and Jusino's conclusions that she does not. (Tr. 27.) This statement is simply inaccurate, since both Malinowska and Nunez filed reports indicating their views that Santiago meets the criteria for mental disability. (Tr. 115–16; 258–59.)

Moreover, Jusino gives no reasoning for his conclusions that the B Criteria are not satisfied. (Tr. 276.) He does explain why, in his expert opinion, Malinowska's determination that Santiago suffers from a cognitive disorder is unfounded. (Tr. 275–77.) His expertise can properly be weighed on this question. However, on the question of Santiago's depression, he merely asserts, without offering any more explanation, that the B Criteria are not met. (Tr. 276.)

Jusino never examined Santiago; his opinion was based on her medical records. Absent further explanation, his conclusory statements are not evidence that would permit the ALJ to ignore the opinions of Santiago's treating physicians. *See Havas v. Bowen,* 804 F.2d 783, 786 (2d Cir.1986) ("[T]he opinions of nonexamining medical personnel cannot in themselves constitute substantial evidence overriding the opinions of examining physicians.").

■ Fourth, the ALJ asserts that if Santiago suffered from a disabling depressive disorder, doctors who examined her over the years for physical ailments would have noted something about her mental condition in their medical records. (Tr. 27.) While it is correct that doctors per-

forming a colonoscopy and other medical procedures did not note that Santiago had any mental deficiencies (Tr. 150), the Court does not consider this evidence to be a sufficient basis for the ALJ's decision not to give controlling weight to the treating physicians' opinions, even in conjunction with the opinions of the non-treating physicians. It is unrealistic to expect that doctors who either lack the necessary qualifications to perform mental examinations or are not examining a patient for such a condition would detect a patient's affective disorder while treating her for a physical ailment.

Fifth, the ALJ asserts that Malinowska's conclusions are contradicted by the clinical notes from St. Mark's, including some of her own notes. (Tr. 27.) However, he does not explain which notes contradict which of Malinowska's opinions. The notes discuss Santiago's anxiousness, social isolation, and difficulty coping with stress. (Tr. 182–186.) According to the clinic's notes, at times Santiago shows signs of improvement, at other times she does not. Even the ALJ agrees that the notes are consistent with Malinowska's conclusion that Santiago suffers from severe depression. (Tr. 27.) Thus, it is unclear how the clinical notes contradict Malinowska's view. To discount Malinowska's opinion that Santiago's depression qualifies as a disability under 20 C.F.R. Pt. 404, Subpt. P, App. 1, the ALJ must specify which portions of the notes demonstrate that a specific subpart of the B Criteria is not met.

▪ Remand is appropriate when the ALJ does not clearly spell out his reasons for discounting the treating physician's opinion. *See Halloran,* 362 F.3d at 33. In this case, the ALJ's assertion that the clinic's notes contradict Malinowska's opinions on the B Criteria is too vague and conclusory. Conceivably, on remand the ALJ may find that the clinical notes along with the opinions of the non-treating phy-

sicians provide substantial evidence that allows him to assign little weight to Malinowska's opinion. However, he must make his reasoning clear and not rely merely on broad assertions.

▪ Finally, the ALJ argues that Malinowska's opinion should be ignored because the form she used did not contain a "Moderate" rating between "Mild" and "Marked," thereby causing her to artificially inflate any moderate impairment into the "Marked" realm. It should first be noted that the form used by Malinowska does not actually have the flaw that the ALJ cites. (Tr. 115–16.) It is the form used by Nunez that does not contain the "Moderate" rating. (Tr. 258–59.) Nonetheless, the explanations written below the ratings demonstrate that Nunez's ratings likely would have been the same even if there had been a "Moderate" option. Since the ALJ cannot substitute his judgment for that of a medical professional, *McBrayer,* 712 F.2d at 799, it is not proper for the ALJ to decide what Nunez would have written had he been given a different form.

The opinions of the non-treating physicians, the conclusory statements by Jusino, the ALJ's observations, and the vague reference to the clinical notes do not amount to substantial evidence that Santiago does not suffer from a mental disability. Since the ALJ has not adequately cited substantial evidence that permits him to give less than controlling weight to the opinions of the treating physicians, the case must be remanded for further proceedings. On remand, the ALJ must apply the treating physician rule to both Malinowska and Nunez and must weigh all evidence in a manner consistent with the Court's determination. If the ALJ still finds that Santiago's depression does not meet the B Criteria for disability, for each criterion, he must specify the evidence that permits him to

give less than controlling weight to the opinions of the treating physicians.

### E. TREATING PHYSICIAN RULE APPLIED TO COGNITIVE DISORDER

 The ALJ did not err in concluding that Santiago does not suffer from a severe cognitive disorder (Tr. 28) despite the contrary ·opinions of her treating physicians (Tr. 169, 263) because the treating physicians' diagnosis of cognitive disorder is inconsistent with substantial evidence in the record. *See Rosa*, 168 F.3d at 78–79.

While the clinical notes from St. Mark's are consistent with a finding that Santiago suffered from severe depression, nothing in the notes is consistent with a diagnosis of cognitive disorder. Moreover, the treating physicians' determination that Santiago suffers from a cognitive disorder was based entirely on psychological tests, not on any medical treatment or associated experience they have had with her over the years. (Tr. 260.) The ALJ could reasonably believe Jusino's expert assertion that those tests were an insufficient means of diagnosing a cognitive disorder. (Tr. 275–76.) Furthermore, since the treating physicians' diagnosis was based solely on psychological tests, their tests need not be given any more weight than similar tests performed by Tapia and the DDS physicians, which found no evidence of cognitive deficiencies in Santiago. (Tr. 100–01, 130–32.)

The tests administered by Tapia and the DDS physicians, the absence of any mention of cognitive problems in the clinical notes, and Jusino's assertion that Malinowska improperly relied too heavily on tests in diagnosing a cognitive disorder are substantial evidence that permitted the ALJ to disregard the treating physicians' opinions and conclude that Santiago did not suffer from a severe cognitive disorder. Since the Court will intervene only if the ALJ's ruling is either not supported by substantial evidence or is arrived at through legal error, this portion of the ALJ's decision is affirmed. *See Johnson*, 817 F.2d at 985.

### III. ORDER

· For the reasons discussed above, it is hereby

ORDERED that this case be remanded to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with the Court's decision; and it is hereby

ORDERED that the motion for judgment on the pleadings filed by plaintiff Luz M. Santiago is GRANTED in part as provided in this decision; and it is finally

ORDERED that the motion for judgment on the pleadings filed by ·the Commissioner is DENIED.

The Clerk of Court is directed to close this case, subject to its being reopened as appropriate following the proceedings on remand directed herein.

SO ORDERED.