Tammy Lee **SPIELBERG**, Plaintiff,

v.

**Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant.**

No. 03–CV–1108 DLI.

United States District Court, E.D. New York.

March 2, 2005.

Tammy Lee Spielberg, Staten Island, NY, pro se.

Daniel D. Kuhn, Kuhn and O'Toole, LLP, Staten Island, NY, for Plaintiff.

Kathleen Anne Mahoney, United States Attorneys Office Eastern District of New York, Brooklyn, NY, for Defendant.

### MEMORANDUM AND ORDER

IRIZARRY, District Judge.

Plaintiff Tammy Lee Spielberg appeals from the Commissioner of Social Security's determination that she is not disabled and thus not entitled to Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Plaintiff's claim for benefits is based on post traumatic stress syndrome, anxiety, fears, and phobias. The decision by the administrative law judge ("ALJ") on April 26, 2002, denying benefits after a hearing held on March 4, 2002,[1] became the Commis-

---

1. Plaintiff's claim was denied initially and on reconsideration. (Admin. R. at 14.) At an earlier meeting with the ALJ on December 7,

sioner's final decision when the Appeals Council denied plaintiff's request for review on January 30, 2003. Pursuant to 42 U.S.C. § 405(g), plaintiff timely filed her request for judicial review in this court on March 4, 2003. For the reasons set forth below, the court reverses the decision of the Commissioner and remands this case for a calculation of disability benefits.

## I. BACKGROUND

At the hearing on March 4, 2002, the ALJ interviewed plaintiff, who reported that the onset of her disability occurred on December 20, 1999. According to plaintiff, she suffers from "a tremendous amount of anxiety and fear and agoraphobia ..., [meaning that she is] very uncomfortable leaving the house. Extremely uncomfortable and fearsome, fearful." (Admin. R. at 58.) Plaintiff testified that she also suffers from post-traumatic stress disorder (PTSD), which is a result of being abused as a child. Her symptoms of PTSD, which recur daily, include anxiety, insomnia, and feelings of helplessness and hopelessness. Plaintiff also reported trouble with short-term memory and anxiety when interacting with people. Plaintiff testified that she has had thoughts about suicide.

Plaintiff received psychotherapy treatment from a social worker in Virginia, starting in 1997 and continuing through her disability onset in December 1999. She began consulting a psychologist in New York in October 2001. Plaintiff reported taking several medications, including Prozac and Ambien, at various times but not since early 1999. She has been diagnosed with depression, dysthmic disorder, PTSD, obsessive compulsive disorder, and personality disorder.

During the three months prior to her disability onset, she had been working as a waitress for 12 to 18 hours per week. Plaintiff's other past employment includes positions as a salesperson (clothing and furniture; around 40 hours per week) and childcare worker (around 25 to 30 hours per week). Between December 1999 and the March 4, 2002 hearing, plaintiff estimates that she had worked a total of 69 hours as a babysitter, for no more than 9 hours per week at a time. She testified that she drives around 18 miles per week to shop at a health food store.

### A. Testimony at the March 2002 Hearing

Impartial medical expert Dr. Michael Friedman testified at the hearing that the claimant did not meet or medically equal any listed impairment in 20 C.F.R. § 404, Appendix 1. In his opinion, the plaintiff would have moderate difficulty interacting with co-workers and supervisors. Dr. Friedman agreed with state agency doctors that plaintiff would have moderate limitations in concentrating, performing scheduled activities, attendance and punctuality, ability to interact with the general public, and setting goals or making self-motivated plans. Based on these findings, the medical expert analyzed plaintiff's condition under the categories of "Affective Disorders: [c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome" (12.04) and "Anxiety Related Disorders" (12.06).[2] For both categories, the necessary severity level is met where the claimant satisfies requirements under parts A and B or under parts A and C of the description. Both sides agreed that part C was not applicable for either disorder. For both categories, Dr. Friedman found part A satisfied.[3]

---

2001, plaintiff withdrew her request for a hearing but later renewed it. (*Id.* at 23, 124–25.)

**2.** Under 20 C.F.R. pt. 404, subpt. P, app. 1.

**3.** Under "Affective Disorders," Dr. Friedman found part A satisfied in terms of Medically documented persistence, either continuous or intermittent, of ... Depressive syndrome characterized by at least four of the following:

As to part B of both categories, plaintiff must have two of the following symptoms: (1) marked restrictions of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Dr. Friedman found plaintiff's limitations moderate for (2) and (3). Therefore, he agreed with the treating psychologist and social worker that plaintiff had these symptoms but considered her limitations "moderate"[4] rather than "marked." He based this conclusion on his observations at the hearing, noting plaintiff's apparent ability to concentrate on the ALJ's questions, to sit for a long period of time, and to take care of grooming and personal hygiene. Dr. Friedman also found telling plaintiff's lack of difficulty in using public transportation and the fact that she was never fired from any of her jobs.

Next, a vocational expert was given a hypothetical describing plaintiff's impairments as "moderate" in terms of "interacting with supervisors [and] co-workers[,] . . . [t]he ability to perform activities within a schedule, maintain regular attendance and be functional within tolerances, the ability to interact appropriately with the general public[,] and the ability to set realistic goals or make plans independently of others." (Admin. R. at 100.) The vocational expert testified that plaintiff would be able to perform her past relevant work as a childcare worker but that working as a salesperson or waitress would not be sufficiently routine for plaintiff's condition. The vocational expert also suggested plaintiff could work as a file clerk or a library assistant.

For a second hypothetical, the ALJ asked the vocational expert to assume plaintiff's testimony to be true, including as to concentration and memory limitations. The vocational expert testified that plaintiff would not be capable of performing any of her past relevant work or engaging in any other employment on a consistent and sustained basis.

a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions or paranoid thinking[.]
Dr. Friedman considered (c), (e), (f), and (h) applicable in plaintiff's case. (Admin R. at 93—94.)
Under "Anxiety Related Disorders," Dr. Friedman found that plaintiff had [m]edically documented findings of at least one of the following:
1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning;
Or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress[.]

4. "Moderate," as used by Dr. Friedman, means an impairment that "reduces but does not preclude ability to function." (Admin. R. at 100.)

B. *Other Medical and Psychological Evaluations*

The record also contains evaluations and letters from Dr. Dinoff (a non-examining consultative doctor), Dr. Renee Ravid (a consultative psychiatrist), Mr. James McKinley–Oaks (a treating social worker), Dr. Noah Malowitzky (a treating psychologist), and Dr. Alex Rizk and Dr. Josie Kinkade (treating doctors).

Dr. Dinoff, a state medical expert who filled out a form labeled "Mental Residual Functional Capacity Assessment," found plaintiff "not significantly limited" in most areas, with the exception of "moderate" limitations in performing activities within a schedule, interacting with the general public, and setting goals/plans independently of others.[5] Dr. Dinoff found that plaintiff suffered from personality disorder, depression, and anxiety but was "capable of low contact work activities." (Admin. R. at 183.)

Dr. Ravid diagnosed plaintiff with PTSD, rule out dysthymic disorder, and rule out personality disorder. He noted that plaintiff denied having suicidal thoughts and labeled her recent memory as "fair."

Mr. McKinley–Oaks treated plaintiff, both in person and over the telephone, from February 1997 through at least mid–2001. He described plaintiff's limitations as "marked"[6] in many areas, including planning daily activities, initiating activities independently of others, communicating clearly and effectively, getting along with friends and neighbors, exhibiting so-cial maturity, responding to authority, maintaining employment, and avoiding altercations and evictions.

Dr. Malowitzky, who treated plaintiff weekly starting in October 2001, described plaintiff's limitations as "marked" in many of the same areas as Mr. McKinley–Oaks,[7] and he added several more "marked" limitations, including grooming and personal hygiene, using public transportation and post offices, keeping appointments, and getting along with strangers.

The notes of Dr. Rizk and Dr. Kinkade, recorded sporadically from May 1997 to August 2000, indicate plaintiff was suffering from depression, anxiety, and insomnia and report the prescription of several medications. However, these reports do not comment on plaintiff's daily functioning.

## II. STANDARD OF REVIEW

Defendant argues that the case should be remanded for further administrative proceedings, because the court is not in a position to review the ALJ's decision, which did not sufficiently explain the weight it gave to the medical and opinion evidence presented. Plaintiff admits that the ALJ's analysis falls short in this respect but contends there is persuasive proof of disability in the record to support a reversal of the Commissioner's decision.

The district court reviews the Commissioner's decision to determine whether it is supported by substantial evidence and based on correct legal standards. *Schaal v. Apfel*, 134 F.3d 496 (2d Cir.1998). In the court's review of the record, "[t]he

---

**5.** "Marked limitation" was also an option, but Dr. Dinoff did not report plaintiff to have any marked limitations.

**6.** The form he filled out states: "Please check all areas in which your patient has exhibited marked difficulty, either continuously or intermittently in functioning independently, appropriately and/or effectively." (Admin. R.

at 206.) Dr. Malowitzky filled out a similar form.

**7.** However, Dr. Malowitzky did not find marked limitations in communicating clearly and effectively, avoiding altercations, avoiding evictions (not listed on Dr. Malowitzky's form), and avoiding social isolation.

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate where "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the application and regulations." *Manago v. Barnhart*, 321 F.Supp.2d 559, 568 (E.D.N.Y.2004) (collecting Second Circuit cases). In contrast, remand to further develop the record is not proper if the court has "no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir.1999). In such case, the court may remand solely for the calculation of benefits. *Id.*

In this case, the court has considered the ALJ's determination as to plaintiff's claim for disability benefits. An individual is "disabled" under the Social Security Act where there is "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof of showing dis-

ability by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5); *see also Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983).

Pursuant to 20 C.F.R. § 404.1520, there is a five-step process whereby the ALJ determines disability under the Social Security Act. If at any step, the ALJ makes a finding that the claimant is either disabled or not disabled, the inquiry ends there. At the first step, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers the medical severity of the claimant's impairment(s), without reference to age, education, or work experience. To be considered disabled, the claimant must have a physical impairment that, either individually or in conjunction with other such impairments, satisfies the duration requirement in § 404.1509. 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in Appendix 1. 20 C.F.R. § 404.1520(d). If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity." 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." *Id.* Finally, the ALJ determines whether the claimant could adjust to other work, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to show that the claimant could perform the other work. *Draegert v. Barnhart*, 311 F.3d

468, 472 (2d Cir.2002) (citing *Carroll,* 705 F.2d at 642).

The ALJ considers all medical opinions received regarding the claimant. 20 C.F.R. § 404.1527(d). Pursuant to 20 C.F.R. § 404.1527(d)(2), the ALJ must evaluate treating sources as follows:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

If the ALJ does not give controlling weight to a treating source, the ALJ then applies several factors in determining what weight to give the opinion, including the length, nature, and extent of the treatment relationship, the frequency of contact with the treating source, whether evidence such as laboratory findings supports the source's opinion, the consistency of the opinion with the rest of the record, and whether the treating source is a specialist. 20 C.F.R. § 404.1527(d). These factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts. 20 C.F.R. § 404.1527(f).

This non-absolute standard of deference to treating sources superceded the "treating physician rule," which existed prior to 1991, whereby a treating physician's opinion was binding absent any contradicting evidence and given extra weight even if contradicted. *Schaal,* 134 F.3d at 504. Regardless of how the ALJ weighs the different opinions in the record, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa,* 168 F.3d at 79 (quoting *McBrayer v. Sec'y of Health & Human Servs.,* 712 F.2d 795, 799 (2d Cir.1983)).

## III. ANALYSIS OF THE ALJ'S FINDINGS

The ALJ found that plaintiff had not engaged in substantial gainful work since the alleged onset of her disability on December 20, 1999. Although in step two the ALJ found that plaintiff had "mental impairments that are severe within the meaning of the Regulations," in step three he found that any impairments were "not severe enough to meet or medically equal one of the impairments listed in Appendix 1." (Admin. R. at 16.) The ALJ then briefly summarized the testimony and evaluations from the several sources described above. The only explanation the ALJ gave for not giving weight to the opinions of the treating psychologist (Dr. Malowitzky) and social worker (Mr. McKinley–Oaks) was the following: "In this case the treating source and social worker assessments are not supported by the evidence, as confirmed by the medical expert." (Admin. R. at 17.)

On the other hand, the ALJ noted giving "significant weight to the reports of the state agency medical consultants with regard to the degree of limitations and restrictions of the claimant's abilities ...," which are consistent with the opinion of the medical expert." (*Id.*) Although the ALJ did not specifically describe why he gave more weight to the impartial medical expert's testimony and the state medical consultant's report, the main disagreement with the treating sources was whether plaintiff's impairments are "marked" or only "moderate."

Indeed, after hearing Dr. Friedman's assessment that none of plaintiff's limitations was "marked," the ALJ focused several times on whether there was evidence of "marked" limitations. For example, plaintiff's counsel asked Dr. Friedman the following: "[D]oes the patient experience deficiencies of concentration, persistence of

pace resulting in frequent failure to complete tasks in a timely manner[?] The social worker [Mr. McKinley–Oaks] said, yes, and then was asked to describe and the social worker said thinking and behavior frequently interrupted by obsessions, flashbacks, ... or anxiety." (Admin. R. at 81.) The ALJ then interjected, "That's not quite the same thing as finding marked limitations, though, is it?" Dr. Friedman replied, "No." (*Id.*)

The ALJ also asked plaintiff's counsel whether he had "any specific documentation that uses the word marked, the listing level requirement for marked." (*Id.* at 82.) Although plaintiff's counsel replied that he had no such documentation, the court notes that, when filling out their evaluations, both the treating psychologist and social worker checked off areas of limitations that they considered marked, as described in detail above.[8]

When asked why he chose to describe plaintiff's limitations as moderate rather than marked, Dr. Friedman stressed his observations of plaintiff at the hearing:

[Question:] Let me ask you a question, doctor[,] how were you making the distinction. Why are you coming down on the side of moderate rather than marked? What evidence are you relying upon?

[Answer:] Well, I'm observing the Claimant here this morning. The way she presents here and it doesn't appear to me as I watch her that her ability to concentrate on the questions of the Judge here or indicat[e] that she doesn't have the ability to concentrate and persist over a long period of time here as she is here in the session this morning. She does indicate that she's able to care for her ADLs. She does indicate that she's able to go out and purchase things that she needs, [which] doesn't indicate

to me that her ability to sustain concentration, persistence[,] and pace, at least as it concerns simple routine work[,] would be markedly limited.

Plaintiff argues that Dr. Friedman's conclusions are based on the impermissible "sit and squirm" test, which the Second Circuit has rejected. However, the "sit and squirm index" refers to an ALJ's own observations of the claimant, which are not entitled to much weight since the ALJ is not a medical expert. *See Aubeuf v. Schweiker*, 649 F.2d 107, 113 n. 7 (2d Cir.1981). Here, these observations came from a medical expert. Furthermore, the ALJ may give "limited weight" to his observations about the plaintiff's demeanor at the hearing, as provided by Social Security Ruling 96–97p, 61 Fed.Reg. 34,483 (July 2, 1996). *See Schaal*, 134 F.3d at 502.

Nevertheless, the court finds that the ALJ failed to accord proper weight to the reports of the treating psychologist and social worker, who had the opportunity to examine and treat plaintiff over an extended period of time—not just over the course of one morning. The regulations provide that treating source opinions "on *the nature and severity* of [the claimant's] impairment(s)" should be given "controlling weight" where "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2) (emphasis added); *see also Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003).

The ALJ apparently accorded less weight to the treating source opinions because he found them inconsistent with Dr. Friedman's testimony at the hearing and the state agency doctor's report. Howev-

---

8. *See* Part I.B, *supra*.

er, the ALJ should have considered that Dr. Friedman and the state agency doctor only saw the plaintiff once, each for an extremely limited time period. *See Green–Younger,* 335 F.3d at 107; *Gallart v. Apfel,* 2001 WL 392226, at *8 (S.D.N.Y. 2001). In contrast, Dr. Malowitzky saw plaintiff on a weekly basis for approximately five months before the hearing, and Mr. McKinley–Oaks spoke to plaintiff one to three times per week for just over four years. Therefore, their conclusions were based on observations more linked to plaintiff's daily activities than were those of Dr. Friedman and the state consultant. As such, though there was disagreement over whether plaintiff's limitations were moderate or marked, the one-time assessments should not have been considered "substantial evidence."

Dr. Malowitzky reported "chronic fatigue" that "does not allow [plaintiff] to function in work situations" and described plaintiff's limitations as "marked" in many daily living and social functioning categories. (Admin. R. at 200–01.) Mr. McKinley–Oaks also checked off "marked" limitations in many of these areas and added: "[Plaintiff] decompensates rapidly when receiving criticism, feedback, or supervision. When working free of supervision as a childcare worker, she deteriorates due to frequent triggering of her experiences of neglect and abuse in childhood." (*Id.* at 207.) Furthermore, Mr. McKinley–Oaks noted: "Her exceptional intelligence and innate ability to connect with others have been so obstructed that she has a history of losses in maintaining relationships and employment. Repeated failures in attempts at work and relationships have further injured her sense of self, self-esteem, and coping abilities." (*Id.* at 177.)

There is no disagreement that plaintiff satisfied the requirements under part A for both "Affective Disorders" and "Anxiety Related Disorders." In looking at part B under both disorders, had the ALJ given more weight to the treating sources, he would have found plaintiff disabled because her limitations were described as marked in two out of the four areas, namely, "marked difficulties in maintaining social functioning" and "marked difficulties in maintaining concentration, persistence, or pace." The ALJ applied the incorrect legal standard by not giving controlling weight to the opinions of Dr. Malowitzky and Mr. McKinley–Oaks. As there is no further evidence that must be developed in this case, the court reverses the Commissioner's decision and remands solely for a calculation of benefits.

## IV. CONCLUSION

For the reasons explained above, plaintiff's appeal is granted. The Clerk of the Court is directed to remand this case to the Commissioner of Social Security for a calculation of benefits.

SO ORDERED.