**Daniel A. BECKERS, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**No. 13–CV–6224 EAW.**

United States District Court,
W.D. New York.

Signed Aug. 14, 2014.

Charles E. Binder, Binder and Binder, P.C., New York, NY, for Plaintiff.

Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, for Defendant.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, District Judge.

## I. INTRODUCTION

Plaintiff Daniel Beckers ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Plaintiff's application for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. (Dkt. 1). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Gerardo Perez was not supported by substantial evidence in the record and was based on erroneous legal standards.

Presently before the Court are the parties' opposing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 4, 11). For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted in part, and this matter is remanded for further administrative proceedings.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Overview

On May 25, 2010, Plaintiff protectively filed applications for SSD and SSI. (Tr. 124–35, 152). In his application, Plaintiff alleged disability since April 15, 2009, due to bipolar disorder, anxiety disorder, and hypothyroidism. (Tr. 124–35, 156). Plaintiff's applications for SSD and SSI were initially denied on September 16, 2010. (Tr. 75–82). Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 83–84). On August 23, 2011, Plaintiff, represented by counsel, testified at a hearing before ALJ Gerardo Perez. (Tr. 51–70). Vocational Expert ("VE") Hector Puig also appeared and testified. (Tr. 64–69).

On September 2, 2011, ALJ Perez issued a decision finding Plaintiff not disabled. (Tr. 21–33). On March 8, 2013, the Appeals Council denied review, rendering the ALJ's decision the final decision of the

Commissioner. (Tr. 1–7). Plaintiff commenced this civil action appealing the final decision of the Commissioner on April 30, 2013. (Dkt. 1).

### B. The Non–Medical Evidence

#### 1. Plaintiff's Testimony

Plaintiff was 26 years old on the alleged disability onset date. (Tr. 32). He attended school through the tenth grade, and later received his GED. (Tr. 55). His previous work included food vender, department manager, and waiter. (Tr. 55; Tr. 157).

Plaintiff testified that he was unable to work due to his inability to focus, his excessive tiredness, and his anxiety. (Tr. 55–56). Plaintiff indicated that his medications also made him dizzy, and that his physicians were trying to find the right medication combination to alleviate the dizziness. (Tr. 56).

Plaintiff stated that on a typical day he would spend the day in his room alone. (Tr. 57). Plaintiff had one friend who would visit him at his house, where he lived with his parents. (Id.). Plaintiff testified that he did not go outdoors unless there was nobody around, and if he had to be around people, he had to take Xanax to alleviate his anxiety. (Tr. 57–59). Plaintiff stated he did not drive, and if he went anywhere he was typically accompanied by his mother. (Tr. 58). Plaintiff claimed that he napped every day for two to three hours, and experienced trouble with his memory. (Id.). Plaintiff did testify that he mowed the lawn, but he otherwise had no household chores. (Tr. 57). Plaintiff testified that he was not allowed to cook at his house because in the past he forgot what he was doing and left the stove on. (Tr. 59).

#### 2. The Vocational Expert's Testimony

VE Puig testified that a hypothetical individual of Plaintiff's age, education, and work history, who had no physical limitations but who was limited to performing simple, routine, repetitive tasks, and could have no contact with the general public, could not perform Plaintiff's past relevant work. (Tr. 65–66). However, VE Puig testified that such an individual would be able to work as a sorter, ticketer, or hand packager. (Tr. 66). According to the VE, there were a significant number of these jobs in the national economy for Plaintiff to perform, many of which were located in the Rochester, NY area. (Tr. 67).

In a second hypothetical, the VE was asked; to consider the same limitations as the first hypothetical, with the additional limitation that the individual would need a low stress job. (Id.). VE Puig responded that the individual would still be able to perform the representative jobs of sorter, ticketer, or hand packager. (Id.).

In a third hypothetical, the VE was asked to consider all of the above limitations as well as the possibility that the individual would be off task for ten percent of the day in addition to regular breaks. (Tr. 68). The VE opined that there would be no jobs for such an individual to perform. (Id.).

Plaintiff's attorney asked the VE to consider an individual with the same limitations who would be absent from work two or three times per month due to impairment or medical appointments. (Id.). The VE stated "that rate or number of frequency of absences surpasses what we call regular absence tolerances related in industry ... he would not be able to satisfy any employer in any kind of work, he would be out of the labor market." (Id.).

## C. Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

On July 21, 2009, therapist Amanda J. Hackett, L.M.S.W., and psychiatrist Jennifer Palamara, M.D., of Kelly Behavioral Health Center ("KBHC") completed a psychosocial-psychiatric assessment of Plaintiff. (Tr. 206–09). Plaintiff complained of panic attacks and racing thoughts. (Tr. 206). Plaintiff reported feeling "as if he is crawling out of his own skin." (*Id.*). Plaintiff was diagnosed with anxiety disorder not otherwise specified, rule-out bipolar disorder, and rule-out personality disorder. (Tr. 208).

Marianne Miles, NPP, Ph.D., Plaintiff's nurse practitioner at KBHC, evaluated Plaintiff on July 27, 2009. (Tr. 210). Plaintiff complained of racing thoughts, insomnia, severe anxiety, and a feeling like his "insides are racing." (*Id.*). Dr. Miles noted, *inter alia*, a restricted affect, anxious mood, angry episodes, tangential thinking, insomnia, and slightly distorted perceptions. (Tr. 212). She diagnosed anxiety disorder, bipolar disorder, and rule-out personality disorder. (Tr. 213).

On August 19, 2010, Kevin Duffy, Psy. D., a licensed psychologist, consultatively examined Plaintiff. (Tr. 245–49). Dr. Duffy opined that Plaintiff could follow and understand simple directions and instructions, and perform tasks independently. (Tr. 247–48). Dr. Duffy further opined that Plaintiff may have difficulty maintaining attention and concentration, relating adequately with others, and dealing appropriately with stress. (Tr. 248). However, Dr. Duffy also found that Plaintiff was capable of maintaining a regular schedule, performing complex tasks independently, and making appropriate decisions. (*Id.*). Dr. Duffy diagnosed Plaintiff with bipolar disorder not otherwise specified, and rule-out impulse control disorder not otherwise specified. (*Id.*).

State agency psychological consultant E. Kamin completed a Psychiatric Review Technique on September 15, 2010. (Tr. 260). Dr. Kamin indicated that Plaintiff had mild restrictions of daily activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (*Id.*). Dr. Kamin further opined that Plaintiff could "perform unskilled work in a low contact setting." (Tr. 266).

Dr. Miles issued letters to Ontario County Social Services dated May 19, 2010, and October 18, 2010, in which she stated that Plaintiff was receiving treatment for bipolar disorder and anxiety disorder, and that he would be unable to work. (Tr. 268–69).

Dr. Miles continued to treat Plaintiff at KBHC from May 28, 2010, through March 30, 2011, with the assistance of Maria Gigliotti, a therapist. (Tr. 297–313). On July 29, 2010, Plaintiff reported nightmares and disturbed sleep. (Tr. 300). On October 27, 2010, Dr. Miles noted that Plaintiff reported recent paranoia and depression. (Tr. 307).

On April 21, 2011, Maria Gigliotti completed a psychiatric/psychological questionnaire that was co-signed by Charles Lilly, M.D. (Tr. 314–21). In this questionnaire, the providers diagnosed Plaintiff with general anxiety disorder and rule-out personality disorder. (Tr. 314). Ms. Gigliotti and Dr. Lilly noted poor memory, sleep disturbance, mood disturbance, recurrent panic attacks, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal, decreased energy, and generalized persistent anxiety. (Tr. 315). They also opined that Plaintiff would miss

work two to three times per month. (Tr. 321).

Plaintiff treated with Dr. Miles in June 2011 and July 2011, and was prescribed various psychotropic medications. (Tr. 336–39). Treatment notes from June 29, 2011, indicated that Xanax helped Plaintiff with his social anxiety. (Tr. 336).

On May 25, 2011, Dr. Miles completed a Psychiatric/Psychological Impairment Questionnaire and diagnosed Plaintiff with bipolar disorder and social phobia. (Tr. 326–33). Dr. Miles noted, *inter alia*, poor memory, appetite disturbance, insomnia, mood disturbance, emotional liability, recurrent panic attacks, paranoia, social withdrawal, decreased energy, and generalized persistent anxiety. (Tr. 327–28). Dr. Miles opined that Plaintiff was markedly limited in his ability to concentrate for extended periods of time, perform activities within a schedule, maintain regular attendance, work in coordination to others without becoming distracted, complete a normal work week without psychological disruptions, perform at a consistent pace, interact appropriately with the public, accept instructions and respond appropriately, and travel to unfamiliar places or use public transportation. (Tr. 329–31). Dr. Miles noted that Plaintiff was not a malingerer, and opined that Plaintiff is incapable of handling low stress work. (Tr. 332). Dr. Miles estimated that Plaintiff would be absent from work more than three times per month due to his impairments or treatment. (Tr. 333). This questionnaire was reviewed and co-signed by Dr. Lilly. (*Id.*).

### D. Determining Disability Under the Social Security Act and the ALJ's Decision

■ The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has *lasted or can be expected to last for a continuous period of not less than twelve months.*" 42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin,* No. 13–CV–638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostics techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act. *See Draegert v. Barnhart,* 311 F.3d 468, 472 (2d Cir.2002). The individual will only be declared disabled if his impairment is of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumer-

ated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir.2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

Here, in applying the five-step sequential analysis at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity for the relevant time period. (Tr. 26). At the second step, the ALJ determined that Plaintiff suffered the severe impairments of bipolar disorder and anxiety disorder, but that Plaintiff's impairments of obesity and hypothyroidism were not severe. (*Id.*). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment—specifically Listings 12.04 and 12.08—of 20 C.F.R. Pt. 404, Subpart P, Appendix 1. (Tr. 27). The ALJ determined that Plaintiff had the residual functional capacity to:

> perform a full range of work at all exertional levels, but with the following non-exertional limitations: he can perform simple, routine and repetitive tasks with no contact with the general public, occasional decision making, occasional

changes in work settings and only occasional supervision.

(Tr. 28). Accordingly, at the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as a department manager, which requires the performance of complex tasks as well as frequent interaction with others. (Tr. 31).

The ALJ then proceeded to the fifth step, which is comprised of two parts. First, the ALJ assessed Plaintiff's job qualifications considering his physical ability, age, and education. (Tr. 32). At the time of the alleged onset of disability, Plaintiff was 26 years old, had a GED, and could communicate in English, but could not perform his past work. (*Id.*). Second, the ALJ considered whether there were jobs existing in the national economy that a person with Plaintiff's qualifications and RFC could perform. (*Id.*). The ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of a full range of exertional work was impeded by Plaintiff's non-exertional mental limitations. (*Id.*).

Relying on the VE's testimony, the ALJ determined that Plaintiff could perform the representative jobs of sorter, ticketer, and hand packager. (*Id.*). In light of these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 33).

## III. DISCUSSION

### A. Standard of Review

■ This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3). "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause

for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). 42 U.S.C. § 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).

■ Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (stating that a reviewing Court does not examine a benefits case *de novo*). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996).

■ Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

### B. The ALJ's decision was not supported by substantial evidence.

■ In formulating his RFC, the ALJ considered Plaintiff's testimony, Dr. Palamara's psychiatric notes, Dr. Duffy's opinion, Ms. Gigliotti's treatment notes, Dr. Toor's opinion, Dr. Kamin's opinion, as well as Dr. Miles' progress notes and April 21, 2011 psychiatric questionnaire. (Tr. 29–30). The ALJ assigned "great weight" to the opinion of Dr. Duffy. (Tr. 31). The ALJ assigned "some weight" to the opinions of Dr. Toor and Dr. Kamin. (Tr. 30). Finally, the ALJ assigned "some weight" to treating source Dr. Miles. (Tr. 31). Because the ALJ improperly evaluated the medical evidence in the record, the ALJ's RFC finding is not supported by substantial evidence.

#### 1. Dr. Miles

Plaintiff argues that the ALJ improperly rejected the opinion from Dr. Miles in violation of the treating physician rule. (Dkt. 5 at 11). However, Plaintiff incorrectly assumes that the treating physician rule applies to Dr. Miles.

■ "Under the regulations' 'treating physician rule,' a treating physician's opinion will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record.'" *Ryan v. Astrue*, No. 12 Civ. 8075(HBP), 2014 WL 1089041, at *9 (S.D.N.Y. Mar. 18, 2014) (quoting 20 C.F.R. § 404.1527(c)(2)). However, not all health care providers are treating sources.

Here, although Dr. Miles has a Ph.D. and is referred to by the name of "doctor," she is listed in Plaintiff's medical notes as

his nurse practitioner. (Tr. 346–47). In fact, on one form where her name was pre-designated as "Marianne Miles, M.D.," Dr. Miles crossed out the "M.D." and listed "NPP, Ph.D." (Tr. 326).

Nurse practitioners are considered non-acceptable medical sources. SSR 06–3p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). As a result, the ALJ did not err when he did not apply the treating physician rule to Dr. Miles' opinion.[1]

■■■■■ However, the opinions of non-acceptable medical sources may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* SSR 06–03p states that an ALJ should apply the same factors to analyze the opinion of a non-acceptable medical source as would be used to analyze the opinion of an acceptable medical source. *Id.* at *6. These factors include:

> (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with the other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion.

*Id.* at *4–5. Accordingly, although a nurse practitioner's opinion is not entitled to the same weight as a treating physician, these opinions are entitled to "some extra consideration," when the nurse practitioner has a treating relationship with the patient. *Mongeur,* 722 F.2d at 1039 n. 2; *see*

*also Kohler v. Astrue,* 546 F.3d 260, 268 (2d Cir.2008) (finding that the ALJ was not required to give controlling weight to the plaintiff's nurse practitioner, but should have given her opinion some consideration where the nurse practitioner was the only medical professional available to the plaintiff for long stretches of time). SSR 06–03p further directs that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939, at *6.

Here, the portions of Dr. Miles' opinion that the ALJ disregarded without explanation would have an effect on the outcome of Plaintiff's case.

Plaintiff has been treated regularly at KBHC since at least July 2009 through May 2011, and Dr. Miles treated Plaintiff almost monthly throughout that time. (Tr. 297–313). Dr. Miles was one of Plaintiff's primary sources of medical treatment and prescribed medications for Plaintiff. (*Id.*).

Yet, in rejecting the portion of Dr. Miles' opinion stating that Plaintiff would miss two to three days of work per month, the ALJ stated only that he gave little weight to that opinion. (Tr. 31). The ALJ failed to explain why he would adopt Dr. Miles' opinions concerning Plaintiff's marked limitations but reject her opinion that would likely lead to a finding of disability. (*Id.*).

---

1. The Court notes that although neither party raised the issue, the psychiatric evaluation questionnaire completed by Dr. Miles was also co-signed by Dr. Lilly, Plaintiff's treating psychiatrist, and therefore, that questionnaire may be best evaluated under the treating physician rule. *See* III(B)(2), *infra.* Either way, the ALJ was required to apply the factors of SSR 06–03p in evaluating Dr. Miles' opinion, and he failed to do so.

Plaintiff contends that the ALJ also failed to incorporate some of the marked limitations noted by Dr. Miles in his RFC assessment. (Dkt. 5 at 11). These include the marked limitations in maintaining a regular work schedule, dealing with supervisors, and traveling. (Tr. 329–31).

On remand, the ALJ is directed to clearly delineate which portions of Dr. Miles' opinions will be incorporated into his RFC finding, and which will not be included. To the extent that the ALJ does not include portions of Dr. Miles' opinion, the ALJ is directed to explain, in accordance with SSR 06–03p, why the opinion was not afforded more significant weight.

### 2. Ms. Gigliotti and Dr. Lilly

As Plaintiff properly argues, despite citing extensively to her treatment notes, the ALJ did not address the evaluative opinion of Ms. Gigliotti that was co-signed by Dr. Lilly. (Dkt. 5 at 15; Tr. 29–30).

 Reports co-signed by a treating physician may be evaluated as having been the treating physician's opinion. *See Santiago v. Barnhart,* 441 F.Supp.2d 620, 628 (S.D.N.Y.2006) ("[T]here is no reason to believe that the report Nunez signed does not reflect his own view. Nor is there any legal principle which states that a doctor must personally write out a report that he signs for it to be afforded weight. Since Nunez signed his name to the report and there is no evidence indicating that the report does not represent his opinion, the ALJ erred in discounting Nunez's opinion on this basis alone."); *Keith v. Astrue,* 553 F.Supp.2d 291, 301 (W.D.N.Y.2008) (directing that the ALJ evaluate treatment notes drafted by a nurse practitioner and co-signed by a physician in accordance with the treating physician rule on remand).

Here, the record contains an evaluation signed by both Ms. Gigliotti, Plaintiff's social worker, and Dr. Lilly, Plaintiff's psy-chiatrist. (Tr. 321). That evaluation contains opinions on limitations that support Dr. Miles' noted limitations as well as some of Plaintiffs testimony concerning his limitations. Therefore, particularly because the evaluation was co-signed by Dr. Lilly, it was legal error for the ALJ to entirely disregard the opinion. *See Lopez v. Sec'y of Health and Human Servs.,* 728 F.2d 148, 150–51 (2d Cir.1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him."); *see also* 20 C.F.R. § 404.1527(c) (stating the Commissioner will consider every medical opinion received "regardless of its source").

The record also contains multiple treatment notes from Ms. Gigliotti, signed by Dr. Miles, that were cited extensively by the ALJ in formulating his decision. (Tr. 29–30). The ALJ did not explain what weight was given to these treatment notes that he used in support of his RFC finding.

On remand, the Commissioner should address what weight, if any, is to be given to the co-signed opinion of Ms. Gigliotti and Dr. Lilly, and provide an explanation of how that decision complies with the requirements of SSR 06–03p. In addition, to the extent that the record contains notes by Ms. Gigliotti that Dr. Lilly did not co-sign, the ALJ should evaluate those notes in accordance with 20 C.F.R. § 404.1513(d). *See Canales v. Comm'r of Soc. Sec.,* 698 F.Supp.2d 335, 344 (E.D.N.Y.2010) ("While the ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight, the ALJ had to explain that decision.").

### 3. Dr. Duffy

Plaintiff argues that it was improper for the ALJ to assign greater weight to Dr. Duffy than to that of Plaintiff's treating sources because Dr. Duffy examined Plain-

tiff on one occasion and did not review Plaintiff's medical history. (Dkt. 5 at 13).

The only evidence contradicting the opinion of Dr. Miles and Ms. Gigliotti/Dr. Lilly that Plaintiff would be absent at least three days per month is Dr. Duffy's opinion that Plaintiff was capable of maintaining a regular work schedule. (Tr. 248).

In forming his decision, the ALJ cited to Dr. Duffy's opinion, and assigned the opinion great weight. (Tr. 31). It was improper for the ALJ to accept the one-time evaluation of consulting examiner Dr. Duffy over the opinion of Plaintiff's long time treating sources.

In evaluating Dr. Duffy's opinion, the ALJ assigned great weight because "[h]is opinion is in accordance with the substantial medical evidence of record and with the State agency's conclusions." (*Id.*). Notably, the State agency's conclusions were formulated based on consideration of Dr. Duffy's opinion. (Tr. 266). This circular reasoning does not explain to an examiner of the record why Dr. Duffy's opinion was assigned greater weight than that of Plaintiff's treating sources.

■ "[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.'" *Smith v. Colvin*, No. 12–CV–1169–JTC, 17 F.Supp.3d 260, 268, 2014 WL 1746054, at *7 (W.D.N.Y. May 1, 2014) (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005). "This is particularly so where the consultant directly examines the applicant." *Id.* (citing 20 C.F.R. § 416.927(c)(1)) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.")).

■ However, "[g]enerally, the opinion of a consultative physician, who only examined plaintiff once, should not be accorded

the same weight as the opinion of plaintiff's treating psychotherapist." *Anderson v. Astrue*, No. 07–CV–4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009); *see also Spielberg v. Barnhart*, 367 F.Supp.2d 276, 283–83 (E.D.N.Y.2005) (finding that an ALJ gave too much weight to a single assessment by a consultative physician). "This is because 'consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'" *Id.* (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir.1990)).

This error is particularly salient in light of the nature of Plaintiff's impairment. Here, the episodic nature of Plaintiff's condition results in Plaintiff having good days and bad days. *See Matta v. Astrue*, 508 Fed.Appx. 53, 57 (2d Cir.2013) ("We recognize that a person suffering from bipolar disorder may be vulnerable to ... 'better days and worse days,' and that a claimant's stability on *some* days does not necessarily support the conclusion that he is able to work *every day*") (emphasis in original). Dr. Miles noted that Plaintiff had good and bad days, but that "good days are rare." (Tr. 332). In this instance, an evaluation that lacks the benefit of reviewing the longitudinal treatment records of the claimant offers less probative value than the opinion of a physician who has examined the claimant over the course of many years.

In addition, the one-time evaluation is not consistent with the record as a whole, where the treatment notes of Dr. Miles and Ms. Gigliotti as well as Plaintiff's testimony suggest that Plaintiff was not capable of maintaining a regular work schedule.

On remand, the ALJ is directed to re-evaluate the opinion of Dr. Duffy in light of the appropriate evaluation of the opin-

ions of Dr. Miles and Ms. Gigliotti/Dr. Lilly.

### 4. Dr. Toor and Dr. Kamin

Plaintiff also argues that the ALJ improperly bolstered his RFC finding with the opinions of Drs. Toor and Kamin, State agency psychologists. (Dkt. 5 at 13–14).

■ The ALJ was entitled to consider these opinions pursuant to 20 C.F.R. § 416.912(b)(6). However, "[t]he general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir.1990) (internal quotations omitted). "A psychiatric opinion based on a face-to-face interview with the patient is more reliable than an opinion based on a review of a cold, medical record...." *Velazquez v. Barnhart*, 518 F.Supp.2d 520, 524 (W.D.N.Y.2007). "In the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." *Id.*

Here, the ALJ noted that the opinions of these non-examining physicians were undeserving of the same weight assigned to those of examining or treating physicians, and yet the ALJ heavily relied on these opinions, even stating that the ALJ's RFC finding was consistent with the State agency opinions. (Tr. 30–31). This reliance was made in error due to the ALJ's failure to appropriately consider the opinions of Dr. Miles and Ms. Gigliotti/Dr. Lilly.

In sum, the ALJ simply did not adequately explain, with supporting citations to the medical record, why he rejected Dr. Miles' and Ms. Gigliotti's opinions, co-signed by Dr. Lilly, that Plaintiff would likely miss two to three days of work per month. Considering the long-term relationship each medical source had with Plaintiff, it was inappropriate for the ALJ to summarily reject this opinion without explaining his reasons for doing so. The ALJ states that he gave "little weight to having to miss work so often as indicated above," and "little weight to the opinion that [Plaintiff] has to miss 2–3 days of work a month...." (Tr. 31). However, the ALJ does not explain why he accepts significant portions of the opinions of Dr. Miles and Ms. Gigliotti into his opinion, even utilizing the marked limitations noted by these individuals in the hypothetical to the VE, but rejected this portion of the opinions that would find Plaintiff disabled. (*Id.*). Indeed, the VE testified that an individual of plaintiffs age, experience, and limitations who would be absent for two to three days per month would be "Out of the labor market." (Tr. 68). The record is replete with references to Plaintiff's diagnosis of bipolar disorder and anxiety, and the resulting nightmares, insomnia, and limiting effects. (Tr. 300–01, 303, 306, 313, 315, 327). Dr. Miles noted that Plaintiff experienced manic episodes in the workplace. (Tr. 331).

In a questionnaire dated April 21, 2011, Ms. Gigliotti and Dr. Lilly opined that Plaintiff would miss work at least three times per month as a result of his impairments. (Tr. 321). On May 25, 2011, Dr. Miles completed a questionnaire and indicated that Plaintiff would be absent from work more than three times per month due to his impairments or treatment. (Tr. 333).

■ "It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his deter-

mination." *Sutherland v. Barnhart,* 322 F.Supp.2d 282, 289 (E.D.N.Y.2004). Nor is it appropriate for an ALJ to substitute his own opinion for the findings of medical sources on the record. *See Sublette v. Astrue,* 856 F.Supp.2d 614, 619 (W.D.N.Y. 2012) (finding that, in rejecting the opinions of medical sources, the ALJ "improperly and 'arbitrarily substituted his own judgment for competent medical opinions,' and 'set his own expertise against that of [physicians] who [submitted an opinion to or] testified before him.'" (quoting *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998)) (alteration in original)).

In light of the above, the ALJ's RFC finding was not supported by substantial evidence. On remand, the ALJ is directed to re-evaluate the medical opinions in accordance with the above findings.

**C. The ALJ properly evaluated Plaintiff's credibility.**

■ Plaintiff argues that the ALJ did not properly consider his testimony concerning his physical limitations in finding that Plaintiff's testimony was not entirely credible. (Dkt. 5 at 17). The ALJ applied the appropriate factors in evaluating Plaintiffs credibility, and therefore did not conduct a legally insufficient analysis. However, if the ALJ determines on remand that the opinions of Dr. Miles, and/or Ms. Gigliotti/Dr. Lilly are entitled to greater weight, then the ALJ will need to re-evaluate Plaintiff's credibility in light of the weight afforded to those medical opinions.

The Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence. *Brownell v. Comm'r of Soc. Sec.,* No. 1:05–CV–0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28,

2009). First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In the instant case, the ALJ properly applied the two step analysis. First, the ALJ found that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms. (Tr. 28). Second, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ... residual functional capacity assessment." (*Id.*).

As an initial matter, Plaintiff claims that it was erroneous for the ALJ to find that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Dkt. 5 at 18–19). Plaintiff argues that the ALJ is not permitted to utilize this language because it indicates that the ALJ found the claimant's statements are not credible because they are inconsistent with the ALJ's own RFC finding. (*Id.*)

■ This argument has been rejected by this Court. *See Diakogiannis v. Astrue,* 975 F.Supp.2d 299, 318–19 (W.D.N.Y.

2013) (determining the ALJ's credibility assessment was supported by substantial evidence where the ALJ assessed the plaintiff's subjective complaints "in the context of a comprehensive review of the entire medical record," despite the use of the boilerplate language that the plaintiff's complaints were "inconsistent with the above residual functional capacity"); *Luther v. Colvin,* No. 12–CV–6466, 2013 WL 3816540, at *8 (W.D.N.Y. July 22, 2013) (finding ALJ properly assessed plaintiff's credibility despite boilerplate language in opinion that plaintiff's alleged symptoms were "inconsistent with the above residual functional capacity"). Indeed, courts in this Circuit have stated that it is inappropriate for an ALJ to base his or her credibility determination "solely upon whether the ALJ deems the claimant's allegations to be congruent with the ALJ's own RFC finding." *Burton v. Colvin,* No. 6:12–CV–6347(MAT), 2014 WL 2452952, at *11 (W.D.N.Y. June 2, 2014). "Read in context, however, this statement does not [necessarily] indicate that the RFC assessment was a basis for a finding of lack of credibility." *Briscoe v. Astrue,* 892 F.Supp.2d 567, 585 (S.D.N.Y.2012); *see also Abdulsalam v. Comm'r of Soc. Sec.,* No. 5:12–CV–1632(MAD), 2014 WL 420465, at *7 (N.D.N.Y. Feb. 4, 2014) ("this erroneous boilerplate language does not merit remand if the ALJ offers specific reasons to disbelieve the claimant's testimony") (internal quotation omitted).

■ In the instant case, Plaintiff takes the ALJ's boilerplate language out of context. "[I]t is not sufficient for an ALJ to merely state that he finds the claimant incredible to the extent that her complaints are inconsistent with his RFC determination ... though, '[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determi-

nation of credibility are sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'" *Kunkel v. Comm'r of Soc. Sec.,* No. 12–CV–6478, 2013 WL 4495008, at *3 (W.D.N.Y. Aug. 20, 2013) (quoting *Wischoff v. Astrue,* No. 08–CV–6367, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010)).

Here, the ALJ properly explained why he found that Plaintiff's testimony was not entirely credible because he assessed Plaintiff's allegations in light of the factors set forth in 20 C.F.R. § 404.1529(c). For example, the ALJ discussed Plaintiff's medications, daily activities, and evidence in the medical record. (Tr. 31). Despite the use of boilerplate language, the ALJ thoroughly discussed Plaintiff's testimony and the evidence in the medical record that the ALJ believed contradicted Plaintiff's testimony. As a result, the Court finds that the ALJ did not err in utilizing boilerplate language.

In evaluating a plaintiff's credibility, the ALJ must consider several factors, including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20

minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Stewart v. Barnhart,* 235 F.R.D. 579, 590 (W.D.N.Y.2006); *see* 20 C.F.R. § 404.1529(c).

In considering Plaintiff's testimony, the ALJ noted that Plaintiff had testified "he cannot stay focus[ed], is always tired, randomly falls asleep, and the medication makes him dizzy." (Tr. 29). Further, "he lives with his parents and said he does no household chores and does not leave the house." (*Id.*). The ALJ noted that Plaintiff had a friend who would visit once in a while, and that Plaintiff went shopping and to appointments with his mother. (*Id.*).

The ALJ found these statements to be less than credible. With regard to Plaintiff's bipolar and anxiety disorder, the ALJ cited to the treatment notes of Dr. Palamara, who found Plaintiff amendable to therapy and medication. (*Id.*). In addition, the ALJ cited to the opinion of consulting psychologist Dr. Duffy, Who opined that Plaintiff could perform complex tasks independently and make appropriate decisions. (*Id.*). The ALJ also cited to the June 30, 2010, treatment notes of Ms. Gigliotti, who indicated Plaintiff had increased social anxiety, especially in groups, but who noted on November 9, 2010, that Plaintiff felt better. (*Id.*). The ALJ summarized the remainder of Ms. Gigliotti's treatment notes dated December 15, 2010, and January 19, 2011, and found that "in the overall, Mrs. Gigliotti reported progress compared to previous times." (Tr. 29–30). The ALJ cited to Ms. Gigliotti's January 19, 2011 note that no problems with medication were reported. (Tr. 30). The ALJ noted that Plaintiff reported to Dr. Toor that he was able to cook three days a week, clean four times per week, do laundry two days per week, and shop once per week, as well as shower and dress daily, watch television, and listen to the radio. (*Id.*). The ALJ summarized the July 21, 2009, psychiatric questionnaire completed by Dr. Miles, but noted that in June and July of 2011, Dr. Miles noted that Plaintiff had an improved mood with only occasional episodes of irritability, and that Xanax was helping Plaintiff with his anxiety. (*Id.*).

As a result, the ALJ cited to substantial evidence to support his credibility finding, and in doing so covered most of the factors set forth in the regulations. The Court cannot say that the ALJ conducted a legally insufficient analysis.

On the other hand, if the Commissioner finds on remand that the opinions of Dr. Miles and Ms. Gigliotti/Dr. Lilly are deserving of greater weight, the ALJ is directed to re-evaluate Plaintiff's testimony in light of these medical opinions, citing to specific record evidence contradicting Plaintiff's statements regarding the nature and extent of his symptoms, in particular, Plaintiff's allegations of insomnia, tiredness, and anxiety.

**D. Because the ALJ's RFC finding is unsupported by substantial evidence, the testimony of the VE may not be considered as substantial evidence.**

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform jobs in the national economy because the vocational expert responded to an incomplete hypothetical question as a result of the ALJ's alleged errors in determining Plaintiff's RFC and credibility. (Dkt. 5 at 21–23).

"The vocational expert's testimony is only useful if it addresses whether

the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker,* 649 F.2d 107, 114 (2d Cir.1981). Where the hypothetical questions presented to a VE do not represent the full extent of Plaintiffs disabilities, an ALJ's determination of no disability based on that VE's testimony cannot be supported by substantial evidence, and remand is appropriate. *See De Leon v. Sec'y of Health and Human Servs.,* 734 F.2d 930, 936 (2d Cir.1984).

Here, if the Commissioner determines on remand that greater weight should have been assigned to the opinions of Dr. Miles or Ms. Gigliotti/Dr. Lilly, or that Plaintiff's testimony should have been afforded greater credibility, then the questions posited to the VE would not have expressed the full extent of Plaintiff's disabilities.

Accordingly, if the Commissioner finds on remand that Plaintiff's RFC incorporates additional limitations not presented to the VE at the August 23, 2011 hearing, then the Commissioner is directed to reevaluate whether there are any jobs existing in the national economy for Plaintiff to perform in light of the additional limitations.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is denied, Plaintiff's motion for judgment on the pleadings (Dkt. 4) is granted in part, and this matter is remanded for further administrative proceedings consistent with this Decision and Order.

SO ORDERED.